# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ERIC SOEHNER,                                    Case No. 1:08-cv-166

      Plaintiff,                              U.S. Magistrate Judge Timothy S. Black

      vs.                                     **MEMORANDUM OPINION**
                                         **AND ORDER**

TIME WARNER CABLE, INC.,

      Defendant.

This employment discrimination case is before the Court on Defendant's motion

for summary judgment (Doc. 33), and the parties' responsive memoranda (Docs. 41, 56).

The parties have consented to disposition by the United States Magistrate Judge pursuant

to 28 U.S.C. § 636(c).  (*See* Doc. 18.)

## BACKGROUND AND FACTS

Plaintiff began working for Defendant Time Warner Cable ("TWC") in August

2003 as a Direct Sales Representative ("DSR").  (Soehner Dep. at 60, Ex. 2.)  His primary

job responsibility was to canvass his assigned sales territory and solicit orders for new or

updated cable services and related matters.  (Soehner Dep. Ex. 4.)  At first, he reported to

Wanda Salyers, who in turn reported to Bryant McAfee.  (Soehner Dep. at 78.)

In January 2004, TWC (and Mr. McAfee specifically) promoted Mr. Soehner to

Lead DSR.  (Soehner Dep. at 85-66, 105; Soehner Dep. Ex. 11.)  This promotion

followed a positive performance evaluation by McAfee of Soehner's performance as a

DSR.  (Soehner Dep. at 143-145; Ex. 13.)  As a Lead DSR, Soehner led a team of

approximately ten DSRs.  (Soehner Dep. at 95:10-14.)  His compensation changed to a salary, plus commission, which amounted to an increase in his income.  (*Id*. at 105-106, 109.)

In September 2005, McAfee promoted Plaintiff to a position as "supervisor" reporting to Jeff McMurdy.  (*Id*. at 112, 114, 120.)  Soehner and the other supervisors under McAfee's management, including Mike Henry, attended regular business meetings with McAfee, and Soehner described these interactions with McAfee as professional, as did his fellow supervisor, Michael Henry.  (Soehner Dep. at 136; Henry Dep. at 24.)

Plaintiff's work environment was the main office for approximately 60 field salespeople who would come once a day to enter sales orders and attend meetings.  (Soehner Dep. at 54.)  Throughout the day, groups of salespeople would gather in a work area called the "bull pen," a single large room with several computer terminals.  (*Id.* at 97-99)  In this area, salespeople would say hello, comment on events, discuss work, or tell tales about the events of their day.  (*Id.* at 99, 113, 172)  Sometimes, they would tell the occasional joke or engage in horseplay.  *Id*.  Management, including McAfee, would police against this conduct when it became aware of it or thought it would offend bystanders.  (Soehner Dep. at 100; McAfee Dep. at 70.)

Plaintiff asserts that demoralizing comments were made on a daily basis to him and to some of his co-workers by Mr. McAfee. (Soehner Dep. at 133.)  The comments included "fat jokes," such as comments by Mr. McAfee about the size of Mr. Soehner's belly; exceeding the weight limit for this corner of the building; looking unkempt and disheveled; and that Mr. Soehner's suit contained an extra belt loop for fat people.

(Soehner Dep. at 134, 166-167.)

On February 12, 2006, Plaintiff was admitted to the Kettering Medical Center Emergency Room due to mononucleosis. (*Id*. at 148.) Upon doctor's advice, Soehner requested and was granted leave under the Family Medical Leave Act, which leave was to last until at least March 13, 2006. (Sohener Dep. Ex. 14.) Plaintiff received his full salary during his leave.

Plaintiff asserts that while was on medical leave, Mr. McAfee made several negative comments about the performance of Plaintiff's team, causing Plaintiff concern that Mr. McAfee was not happy with his absence. (Soehner Dep. at 278.) Plaintiff alleges that he felt pressured to take phone calls and attend to other work matters while on FMLA leave.

TWC maintains, however, that Plaintiff himself unilaterally chose to call McMurdy three to four times daily to inquire about his team's performance and to report sales figures, despite knowing that he was not required to do so while on leave. (Soehner Dep. at 165, 176; McMurdy Dep. at 28.) Moreover, Plaintiff never specifically complained of being pressured to work during leave or to return to work. (Soehner Dep. at 161-162). At the completion of his leave, Plaintiff obtained a release from his doctor to return to work, returned to work, and resumed his responsibilities as supervisor at his pre-leave wage and benefit rate. (Soehner Dep. at 162; 230.)

Thereafter, in January and February 2006, all department directors were asked to reorganize and downsize staff to lower TWC's operating expenses. (McAfee Dep. at 36.)

Dennis Holzmeier directed McAfee to select one manager in the direct sales department to be eliminated from that position.  (McAfee Dep. at 36-38; Soehner Dep. at 209.) McAfee ranked Plaintiff and his fellow managers, Mike Henry and Ken Davis, according to their 2005 performance review scores, which caused Plaintiff to be ranked lowest of the three.  (McAfee Dep. at 37, 43-44, 130; McAfee Dep. Ex. 9; *see also* Soehner Dep. Ex. 21.)

Because Plaintiff s score was the lowest of the three managers, he was offered a choice between a demotion and a severance package.  (Soehner Dep. at 212; McAfee Dep. at 47)  Plaintiff accepted the demotion, and, on March 24, 2006, became a Direst Sales Associate, reporting to Mike Henry.

On March 20, 2006, Plaintiff emailed Leroy Peyton, Vice President of Human Resources, about a lack of morale and management issues in Plaintiff's department.  (See Soehner. Dep. Ex. 17.)  In response to a follow-up email from Plaintiff on March 23, 2006, Peyton stated that he would explore Plaintiff's issues.  (*Id.*)

Shortly after Plaintiff contacted Mr. Peyton, the Human Resources Department received an unrelated complaint by a female salesperson who was upset about rumors that she was having an affair with a TWC sales manager.  (Soehner Dep. at 202.)  In response to that complaint, the Human Resources Department interviewed Plaintiff, along with several supervisors and DSR's in Plaintiffs department.  *Id.*

Ms. Walker interviewed Mr. Soehner on or about April 11, 2006, at which time Plaintiff reported an incident where Mr. McAfee had slapped him and called him stupid.

(Walker Dep. at 70, Ex. 16.) Plaintiff also told Ms. Walker of the "fat jokes" and of Mr. McAfee's request of Plaintiff for a $2,000 loan. Plaintiff further reported that Mr. McAfee made inappropriate jokes around the men but not the women. He specifically related that he had been told on numerous occasions by Mr. McAfee to get knee pads and get under the desk and take care of him sexually. (*Id.*) Plaintiff also mentioned concern about his demotion. (*Id.*)

Months later, on June 7, 2006, TWC terminated Soehner's employment when he and several other employees in his department were discovered to have engaged in fraudulent conduct to inflate their commission earnings in connection with TWC's "Dish Win Back" sales incentive program. (Soehner Dep. at 241, 245, 274, 296.) The decision to discharge Plaintiff was made by Plaintiff's supervisor, Jeff McMurdy, based on information he had gathered regarding Plaintiff's conduct with respect to the "Dish Win Back" sales incentive program. (McMurdy Dep. at 39-42.) At the time of his discharge, Plaintiff neither proclaimed his innocence nor challenged his termination. (Soehner Dep. at 294, 295.)

Thereafter, Plaintiff initiated this action by filing a complaint pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. 2601 *et seq.*, against TWC. Plaintiff's complaint also asserts claims under Ohio law for conversion, intentional infliction of emotional distress, sexual harassment, negligent retention, retaliation and wrongful discharge in violation of public policy. (*See* Doc. 1)

## STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989); *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

The Court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Rather, the burden is on the non-moving party

"to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate the specific facts in dispute. *Anderson,* 477 U.S. at 250; *Guarino,* 980 F.2d at 404-05.

## DISCUSSION

Plaintiff "only challenges the present Motion [TWC's motion for summary judgment] with respect to his claims for medical leave/interference; intentional infliction of emotional distress; and retaliation for challenging sexual harassment. He does not otherwise challenge the Motion." (Doc. 41, Plaintiff's memorandum *contra*, p. 1).[1]

A.      *Plaintiff's FMLA Claims*

The FMLA entitles an employee to up to 12 weeks of leave per year if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §§ 2612(a)(1)(D). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* at §§ 2611(11).

Soehner alleges that TWC violated the FMLA by interfering with his FMLA rights and then retaliating against him for taking FMLA leave. TWC argues that Plaintiff has failed to establish triable issues regarding either FMLA interference or FMLA retaliation.

i.      *Interference*

---

[1] Despite this statement, Plaintiff continues to argue and to seek to evidence that he was "terminated in retaliation for taking leave protected under the FMLA," and the Court addresses this claim in this Order. Plaintiff clearly does abandon his claims for hostile work environment, conversion, and negligent retention.

An employer is prohibited from interfering with, restraining, or denying the "exercise [of] or attempt to exercise" any right under the FMLA. 29 U.S.C. §2615. "If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred. . . . Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer." *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). *See also Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 487 (6th Cir. 2005).

To prevail under an interference theory, Soehner must establish that: (1) he is an eligible employee; (2) the defendant is an employer; (3) he was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take leave; and (5) the employer denied him FMLA benefits to which he was entitled. *Novak v. Metro Health Med. Ctr.*, 503 F.3d 572, 577-78 (6th Cir. 2007).

As TWC concedes that Soehner can establish the first four elements of the *prima facie* case, the crux of Soehner's burden here is to show that TWC denied him FMLA benefits to which he was entitled. To establish this fifth element of an interference-theory claim, Soehner must show that TWC "somehow used the leave against (him) and in an unlawful manner, as provided in either the statute or regulations." *Bradley v. Mary Rutan Hosp. Assoc.*, 322 F.Supp.2d 926, 940 (S.D. Ohio 2004).

Here, TWC maintains that the undisputed facts in this case reflect that upon the completion of Plaintiff's leave, TWC accepted Plaintiff back at work, into his former

supervisory position, at his pre-leave wage and benefit rate. (Soehner Dep. at 162, 230.) TWC further argues that Plaintiff is unable to maintain an interference claim "because he cannot show that defendant did not provide him the FMLA leave benefits to which he was entitled." *Manns v. ArvinMeritor, Inc*., 291 F. Supp. 2d 655, 662 (N.D.Ohio 2003). As TWC asserts, here, Soehner was granted full FMLA leave.

Plaintiff asserts, however, that an interference claim can be established when the employer fails to restore an employee to his former position or an equivalent one, or when it discourages its employee from taking leave. *Bradley*, 322 F.Supp.2d at 937. Plaintiff maintains that shortly upon his return from leave, he was demoted. Thus, Plaintiff argues that a jury could consider this demotion, coming so quickly upon the heels of Mr. Soehner's return from leave, and conclude that TWC did not restore him to his former or an equivalent position. Plaintiff argues further that he felt pressured to take phone calls and attend to work matters while he was on leave protected by the FMLA, and thus a jury could determine that TWC "interfered" with Mr. Soehner's attempt to use FMLA leave.

Upon careful review, the Court finds Plaintiff has failed to present triable issues of disputed fact relating to his claims for FMLA interference.

Although Plaintiff complains that he was forced to work while on FMLA leave, his own testimony does not evidence this claim. As Plaintiff testified:

Q.    And when did Jeff [McCurdy] call you in relation to when you first went out? Is that the beginning of the leave, the middle, the end?

A.    I talked to Jeff daily on my phone and I had my work computer.

Q.    And you had your work computer?

-9-

A. I had it.

Q. Okay. And <u>did you ever – so your testimony is Jeff would call you and ask you to do work?</u>

A. <u>Well, the DSR's would call in their sales to me and I would do my reports just as I always did them.</u>

Q. <u>Did you ever tell them not to call you?</u>

A. <u>No.</u>

Q. <u>Did you ever tell Jeff that you're too fatigued to do this work?</u>

A. <u>No.</u>

Soehner Dep. at p. 165 (emphasis supplied).

\*\*\*

Q. <u>When you were out sick you didn't have to report to anybody?</u>

A. <u>Well, I didn't necessarily have to.</u>

Q. But you chose to?

A. But --

Q. <u>You chose to?</u>

A. <u>(Witness nodding head.) I did</u> --

*Id.* at p. 176 (emphasis supplied). Moreover, Plaintiff never told anyone at any time that he "felt" he was being pressured to return to work prematurely. (*Id*. at p. 161-162: "I didn't do anything about it.")

Furthermore, the undisputable evidence of record shows that the later-in-time reorganization was unrelated to Soehner's FMLA leave. As noted above, Plaintiff was selected to be part of that reorganization based upon objective criteria that had nothing to

do with his FMLA leave.  Thus, TWC fully complied with its obligations under the FMLA by allowing Plaintiff to take leave without interference and by restoring him to his previously held position.  *See Manns*, 291 F.Supp. 2d at 662 (no interference claim will lie where employer provided plaintiff with the FMLA benefits to which he was entitled).

Accordingly, under the undisputed facts, TWC is entitled to judgment as a matter of law with respect to Plaintiff's FMLA interference claim.

### ii. Retaliation

Plaintiff also alleges that Defendant unlawfully retaliated against him for taking FMLA leave.[2]

Title VII prohibits an employer from discriminating against any employee "because he has opposed any practice made 'an unlawful practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'"  42 U.S.C. § 2000e-3(a).

To make out a *prima facie* case of retaliatory discharge, a plaintiff must show that: "(1) she engaged in an activity protected by Title VII; (2) this exercise of her protected civil rights was known to defendant; (3) defendant thereafter took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action."  *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990) (citing *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir.

---

[2]  Plaintiff asserts retaliation in violation of 42 U.S.C. § 2000e-3 and Ohio Rev. Code § 4112.02(l).  Because federal and state law retaliation claims are governed by the same standards, the claims will be considered together.  *Abbott v. Crown Motor Co., Inc*., 348 F.3d 537, 541-42 (6th Cir. 2003).

1987)).  All four elements must be established in order to make out a *prima facie* case. *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 831-32 (6th Cir. 1999).

Once a plaintiff has made a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the decision.  *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).  If the defendant meets this burden, then the plaintiff must offer evidence "that the proffered reasons were not the true reason for the employment decision, but were a pretext for discrimination."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 248 (1981); *see also, St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993); *Brown v. EG&G Mound Applied Technologies*, 117 F. Supp. 2d 671, 677 (S.D. Ohio 2000).

### a. Prima Facie Case

TWC maintains that Plaintiff cannot establish a *prima facie* case of retaliation because he cannot show a causal connection between his FMLA leave and his discharge. *See Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1134-35 (6th Cir. 1990) (finding that in order to establish a causal connection, the plaintiff is required to "proffer evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action'" ); *see also Hoffman v. Sebro Plastics, Inc.*, 108 F. Supp. 2d 757, 776 (E.D. Mich. 2000).

Specifically, TWC asserts that Plaintiff was not discharged during his leave, but three months later, and more importantly, he was discharged only after he had been found

to have fraudulently inflated his commission earnings in connection with TWC's "Dish Win Back" sales incentive program.

The Sixth Circuit in *Moore v. Kuka*, 171 F.3d 1073 (1999), held that an employee may establish a causal connection between the adverse employment action and the protected activity by demonstrating that the adverse action was taken shortly after the plaintiff engaged in protected activity and by showing he was treated differently from other employees. *Id. at* 1080. *See also Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Plaintiff asserts that the close timing between his FMLA leave and TWC's adverse actions against him (*i.e.*, demotion and termination) would allow a jury to find a causal connection between his use of leave and his termination. (Doc. 41, p. 19). However, the Sixth Circuit has held that "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008). Here, aside from the temporal proximity argument, Plaintiff does not offer any evidence "'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *See Zanders v. National R.R. Passenger Corp.*, supra, 898 F.2d at 1134-35. *See also Kuka, supra*, 171 F.3d at 1080.

Accordingly, Plaintiff fails to present disputed facts evidencing even a *prima facie* case of unlawful retaliation.

*b.* *Pretext*

Moreover, even assuming Plaintiff had established a *prima facie* case, his retaliation claim still fails as a matter of law because he cannot offer evidence that TWC's legitimate, non-retaliatory reason for terminating him was pretext from some illegal motive.

As noted above, Plaintiff was demoted after his department was downsized and reorganized. Plaintiff's selection as based on objective criteria (*i.e.,* his performance reviews). TWC later terminated Plaintiff's employment because he falsified company documents in a scheme to fraudulently increase his commissions. Accordingly, TWC has evidenced legitimate, non-retaliatory reasons for Plaintiff's demotion and termination, and the Plaintiff would need to present evidence suggesting pretext.

In order to establish pretext, Plaintiff must demonstrate that the reasons given by TWC for his discharge: (i) had no basis in fact, or (ii) did not actually motivate the decision, or (iii) were not sufficient to warrant the action taken. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994). A *prima facie* case, plus a showing that Defendant's articulated reason is false, would be sufficient for a plaintiff to prevail. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-510 (1993); *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 347 (6th Cir. 1997).

Plaintiff asserts that TWC's reason for his termination has no basis in fact. Specifically, he notes that a in a 2005 performance review he was rated as "excellent" in the category of integrity, and, therefore, he could not reasonably be expected to have

engaged in fraud.  Plaintiff also points to statements made by Mike Henry, Plaintiff's friend and co-worker, that Plaintiff may not have engaged in the conduct of which he was accused.  Plaintiff further asserts that TWC's decision-makers gave inconsistent explanations for his demotion.

However, as a matter of law, Plaintiff's subjective opinion and Mr. Henry's statement have no bearing on pretext.  As noted by TWC, Mr. Henry was not a decision-maker with respect to Plaintiff's termination.  Moreover,  the Sixth Circuit has adopted an "honest belief" rule with regard to an employer's proffered reason for discharging an employee.  *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998).  "Under this rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."  *Majewski v. Auto. Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001).  An employer has an honest belief in its reason for discharging the employee "where the employer reasonably relied on the particularized facts that were before it at the time the decision was made."  *Id.*

Although Plaintiff claims that the Sixth Circuit eliminated its deference to the employer's business judgment in *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564 (6th Cir. 2003), Plaintiff's analysis is incorrect.  While the court in *Wexler* observed that an employer's business judgment is not an "absolute defense" to a claim of discrimination, the court did not hold that disagreement (or even reasonable

disagreement) with the employer's decision is enough to establish pretext. Rather, to attack TWC's business judgment, Plaintiff must produce evidence that could support a finding that the employer's decision was unreasonable, or, "<u>so ridden with error that defendant could not honestly have relied upon it.</u>" *Id.* at 576 (quoting *In re Lewis*, 845 F.2d 624, 633 (6th Cir. 1988)) (emphasis supplied).

Here, it is undisputed that Plaintiff's demotion was the result of a departmental reorganization and was based on his 2005 performance review scores. (McAfee Dep. At 36-38, 43, 130; Ex. 9). Furthermore, the record evidence establishes that Plaintiff's termination was based on TWC's conclusion that he had engaged in fraudulent tactics in violation of TWC policy, *see* McMurdy Dep. at 39-42, and Plaintiff, in turn, fails to present evidence that TWC's decision to terminate him was anything but a reasonable exercise of business judgment (the propriety of which Plaintiff argues against).

### B. *Retaliation Claim under Title VII*

Plaintiff further alleges that TWC retaliated against him for allegedly complaining about harassment by McAfee in violation of both Ohio law (O.R.C. § 4112) and Title VII of the Civil Rights Act of 1964.

To proceed, Plaintiff must first establish a *prima facie* case of retaliation by showing the following: 1) he engaged in protected activity; 2) the exercise of his protected rights was known to the defendant; 3) the defendant subsequently took employment action against the plaintiff that a reasonable employee would have found

materially adverse; and 4) there exists a causal connection between the protected activity and the adverse employment action. *Hale*, 493 F. Supp. 2d at 938. Ohio law also employs the *McDonnell Douglas* burden-shifting analysis in retaliation claims. *Id.* at 939. Here, TWC asserts that Plaintiff's claim fails as a matter of law because he did not engage in "protected activity" as the record lacks any evidence that Plaintiff complained of <u>unlawful</u> harassment. Plaintiff asserts, however, that he engaged in protected activity when he (1) complained about "harassment" in an email in which he voiced his displeasure about his demotion; and (2) later "further clarified" the complaint in person to Carol Walker.

Contrary to Plaintiff's assertions, the evidence of record does not establish that Plaintiff complained that McAfee (who selected Soehner for demotion) treated Soehner negatively because of Soehner's gender, ethnic background, religion, race, disability status, or age, or that McAfee engaged in any other conduct made unlawful under Title VII or Ohio Rev. Code Ann. § 4112.

As noted by TMC, Plaintiff's March 20 and 23 emails to Leroy Peyton, Vice President of Human Resources, merely addressed Plaintiff's frustration with his demotion and his perception that there was a lack of morale and management issues in his department. (Soehner Dep. Ex. 17). Moreover, Plaintiff's March 23, 2006 follow-up email to Mr. Peyton again merely challenges his demotion, and, as to "harassment," simply states:

> If it seems I have a bad attitude[,] it's only due to the unbelievable treatment of me and my co workers. [Mr. McAfee] has tried to intimidate me, he has degraded me by calling me fat on a daily basis, he has slapped me in the back of the head, he sold me cookies and never gave them to me (telling me I was fat enough and didn't need them). The documentation I have goes on and on.. . . I have been harassed and humiliated against.

(Peyton Dep. Ex. 8.)

Thus, as noted by TWC, a vague complaint that does not reference conduct made unlawful under Title VII is not protected activity. *See Weaver v. Ohio State Univ*., 71 F. Supp. 2d 789, 793-94 (S.D. Ohio 1998) ("complaints concerning unfair treatment in general which do not specifically address discrimination are insufficient to constitute protected activity"), *aff'd*, 194 F.3d 1315 (6th Cir. 1999); *see also Wiloughby v. Allstate Ins. Co.*, 104 Fed. Appx. 528, 531 (6th Cir. 2004) (where plaintiff's internal letter was contesting the correctness of a decision made by his employer, rather than asserting discrimination, the "vague" complaint was insufficient to constitute opposition to an unlawful employment practice).

Furthermore, Plaintiff's assertion that he engaged in protected activity when he further clarified his complaints to Carol Walker also lacks merit. As noted above, Plaintiff was interviewed by Ms. Walker in connection with another employee's sexual harassment complaint. (*See* Walker Dep. at 65, 73.) Ms. Walker's notes from the interview indicate that Plaintiff advised her of the incident where Mr. McAfee had slapped him and called him stupid, the "fat jokes," and Mr. McAfee's request for a

$2,000 loan. (Walker Dep. at 70, Ex. 16.) He further reported that Mr. McAfee had made inappropriate jokes around the men but not the women, and he related that he had been told on numerous occasions to get knee pads and get under the desk and take care of Mr. McAfee sexually. (*Id.*) He also mentioned concern about his demotion. (*Id.*) Thus, Plaintiff's comments centered around his perceived unfair treatment and demotion, and they do not reference conduct made unlawful by Title VII. *See Wiloughby,* 104 Fed. Appx. at 531; *Weaver*, 71 F. Supp. 2d at 793-94.

Moreover, Plaintiff's comments to Ms. Walker that he had been told on numerous occasions to get knee pads and get under the desk and take care of him sexually do not constitute protected activity. *See Booker v. Brown & Williamson Tobacco Co., Inc*., 879 F.2d 1304 (6th Cir. 1989). In *Booker*, the plaintiff filed a complaint with human resources suggesting that his supervisor was a racist and that complaints about plaintiff's performance were "ethnocism." *Id*. at 1309. The district court concluded that this was not protected activity, and the Sixth Circuit affirmed. *Id*. at 1313. ("Booker suggests that Pavona may be a racist due to a statement he allegedly made. However, the allegation is not that Brown & Williamson is engaging in unlawful employment practice, but that one of its employees has a racial intolerance").

Plaintiff's comments to Ms. Walker were made in connection with an investigation of sexual harassment by a female employee. Plaintiff's comments focused generally on his opinion of McAfee and could not have put TWC on notice that Plaintiff was engaging

in protected activity, *i.e.*, opposing discrimination made unlawful by Title VII. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 520 (6th Cir. 2009) ("with respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings. . . and those who oppose discrimination made unlawful by Title VII"). Additionally, Plaintiff made no further attempt to inform TWC of such allegations.

Accordingly, the Court finds as a matter of law that Plaintiff's comments to Ms. Walker do not constitute protected opposition to unlawful activity, and, therefore, cannot serve as the basis for a claim of retaliation.

Nonetheless, even if this Court were to find that Plaintiff met his burden of establishing that he complained about unlawful treatment, Plaintiff fails to establish a *prima facie* case of retaliation because he fails to evidence that the individuals involved in his termination *knew* about his complaints. As noted above, the decision to discharge Plaintiff was made by Plaintiffs supervisor, Jeff McMurdy, based on information he gathered regarding Plaintiffs conduct with respect to the "Dish Win Back" sales incentive program. (McMurdy Dep. at 39:8-42: 16.) The evidence of record does not establish, nor does Plaintiff allege, that McMurdy knew about Plaintiff's comments to Ms. Walker.

Moreover, even if Plaintiff established a *prima facie* case, his retaliation claim still fails as a matter of law because he cannot evidence that TMC's legitimate, nonretaliatory reason for terminating him was pretext from some illegal motive. (*See* pp. 14-16, *supra*.)

C.        *State Law Claim for Intentional Infliction of Emotional Distress*

Pursuant to 28 U.S.C. § 1367(c)(3), the district court has the discretion to dismiss claims over which it has supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction.  *Dobbs-Weinstein v. Vanderbilt Univ.,* 185 F.3d 542, 546 (6th Cir. 1999), *cert. denied,* 529 U.S. 1019 (2000).  Moreover, the Sixth Circuit has recognized a general rule disfavoring a district court's exercise of pendent jurisdiction when federal question claims are dismissed before trial.  *See Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 319 (6th Cir. 1987) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966)); *see also Wolotsky v. Huhn,* 960 F.2d 1331, 1338 (6th Cir. 1992) ("Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits.").

Here, Plaintiff's complaint asserts a state law claim for intentional infliction of emotional distress.   However, because Plaintiff's federal claims are properly dismissed on summary judgment (as are his claims under O.R.C. § 4112), this Court should not maintain supplemental jurisdiction over Plaintiff's state law claim for intentional infliction of emotional distress.  *Musson Theatrical, Inc. v. Federal Exp. Corp*., 89 F.3d 1244, 1254-55 (6th Cir. 1996); *see also Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001)**.**  Accordingly, Plaintiff's state law claim for intentional infliction of emotional distress is hereby dismissed without prejudice.

**CONCLUSION**

Wherefore, based on the evidence of record, the Court finds that there are no genuine issues of material fact for trial, and that TWC is entitled to judgment as a matter of law. Accordingly, TWC's motion for summary judgment is **GRANTED,** and this case is **CLOSED**.


Date:  November 16, 2009                          s/Timothy S. Black
                                                  Timothy S. Black
                                                  United States Magistrate Judge